## CRUMLEY v. LAURENS BANKING COMPANY.

1. A testator devised a tract of land to his wife for life, and at her death to four named children, and in case of death of any child before majority or without children, that share to belong to the survivors. The life-tenant filed an application to the court of ordinary where the administration was pending, renouncing her life-estate and asking division in kind of the land among the children, for whom she was guardian. A division was had pursuant to her application. *Held*, that the court of ordinary was without jurisdiction to partition the land among the remaindermen.

(a) The exemplification of the record was inadmissible to prove a valid legal partition, but was admissible as an element of an estoppel, referred to in the next note.

2. If the life-tenant expressly relinquished her life-estate in the land and procured a division of it among the remaindermen, who entered into possession of their respective shares and have remained in possession for a long period of years, and have erected valuable improvements on the faith of the life-tenant's waiver of her interest in the land, she will be estopped from asserting her right to a life-estate in the land as against them.

3. It was error to direct a verdict for the plaintiff in fi. fa., in view of the conflicting evidence as to the claimant's waiver of her life-estate and acquiescence in a partition of the land.

ApRIL 23, 1914.

Claim.    Before Judge Graham.    Montgomery superior court. May term, 1913.

*Charles D. Loud,* for plaintiff in error.

*M. B. Calhoun, J. B. Geiger,* and *W. M. Lewis,* contra.

Evans, P. J.    This is a claim case.    A fi. fa. in favor of the Laurens Banking Company against J. D. Miller was levied on 305 acres of land described in the levy, and a claim was interposed by Mrs. J. A. Crumley.    A verdict was directed in favor of the plaintiff in fi. fa.    It was admitted that Thomas Miller died testate, seised and possessed of 1400 acres of land, which included the land in controversy.    In the second item of his will the testator devised this land to his wife for life, after her death to his four children, "but if any of said children above mentioned should die without heirs or before reaching majority, then such share or shares to go to and belong to the survivors of those above mentioned."    The wife is the claimant, and one of the children is the defendant in execution.    For the purpose of showing a renunciation of her life-estate by the life-tenant and a partition of the land amongst the remaindermen, in which partition the land in controversy was assigned to the defendant in execution, an exemplification from the record of the court of ordinary was offered in evidence.    This exemplification embraced:    (1) a petition to the ordinary of the county, by the life-tenant, who represented therein that she was the mother and guardian of the four children, and recited that she desired to relinquish her life-estate in the 1400 acres of land devised to her for life, with remainder to her children, and to have a division in kind among her children.    (2) Rule nisi issued by the ordinary, for service of the petition upon "the heirs or their guardian."    (3) An acknowledgment of service by Julia A. Crumley, as guardian of her children.    (4) Order by the ordinary, dated November 5, 1894, appointing partitioners and directing a division of the land in kind, as prayed.    (5) The return of the partitioners, dated April 10, 1895.    (6) A nunc pro tunc order, at the June term, 1910, making the return the judgment of the court. When this exemplification was tendered in evidence, it was objected to on the grounds that the proceedings were void, because the court of ordinary did not have jurisdiction of the subject-matter, and the claimant had no notice of the entry of the nunc pro tunc order made fifteen years after the return of the partitioners.

1. At common law, real estate became vested, on the death of the owner, in his heirs or devisees, and the executor or administrator as such had no inherent power over it. Schouler on Wills and Administration, § 212. By statute of this State realty descends directly to the heirs, subject to be administered by the legal representative, if there be one, for the payment of debts and the purposes of distribution. Civil Code (1910), § 3657. If the owner dies testate, the title passes by will to the devisees, subject to be administered by the executor for the payment of debts and distribution under the will. In cases of intestacy, it is the duty of the administrator to distribute the estate among the heirs; and this implies that the aliquot part of each heir is to be assigned in severalty. Where a testator disposes of his property by will, it is the duty of the executor to distribute the property according to the will. If land is devised to several as tenants in common, there is no obligation on the executor (unless the testator expressly or impliedly so directs) to partition the land among the tenants in common. If the executor assents to the devise, the land passes under the will to the tenants in common as purchasers, and in the further administration of the testator's estate the executor is not concerned with the apportionment which the devisees may desire amongst themselves. Should a devisee wish his share assigned to him in severalty, a distinct proceeding to that effect initiated by him is something apart from the administration of his donor's estate. It is a partition action in which no one is concerned except the devisees, and must be had in a court having jurisdiction over such matters. Has the court of ordinary that jurisdiction? The statute provides that the ordinary may order a distribution of an estate in kind, on the application of the representative or any distributee of the estate, on notice to parties in interest. Civil Code (1910), §§ 4057-4060. One of these sections (4058) contains the provision: "If only a portion of the distributees or legatees are entitled at the time to the possession of their portion of the property, their shares may be set apart as aforesaid, and the remainder be left in common stock for distribution." Independently of any provision in the will, the power and jurisdiction of the ordinary to divide the land must come from these sections of the code. The verbiage indicates that these sections mainly relate to a division in kind among distributees in cases of intestacy. The reference to legatees is to cover property as

to which the will imposes a duty of division, or where it would be proper to make a division of property devised in common under the peculiar exigencies of a particular case. These sections contain no implication or suggestion of conferring on the court of ordinary jurisdiction to divide realty devised to persons as tenants in common, at the instance of one or more of the common owners. Indeed, if the General Assembly had undertaken to confer jurisdiction in this respect, grave complications might arise. In order effectually to make the partition it would be necessary for the ordinary to construe the will and determine the nature of the estate the cotenants take. The facts of the present case illustrate this difficulty. The land is devised to one for life, with remainder to four persons, with right of survivorship in case of death of any remainderman before attaining majority or without heirs. What is the meaning of the word "heirs" in this connection? Was the term intended by the testator in its generic sense, or as the equivalent of children? This calls for construction, and the court of ordinary has no power to construe wills.

The provision for the partition of land in the superior court (Civil Code (1910), § 5358) is strongly supportive of this conclusion. It is there provided that in all cases where two or more persons are common owners of land, and *no provision is made by will* or otherwise as to how the land is to be divided, any one of the common owners may apply to the superior court for a partition. We therefore hold, that, inasmuch as the will of Thomas Miller did not expressly or impliedly provide for a division of the remainder estate between his children, the ordinary was without jurisdiction to entertain the partition proceeding offered in evidence. Being without jurisdiction, the whole proceeding was void. Though the exemplification was not admissible as evidence of a valid and legal partition of the land, it was admissible in aid of an estoppel, as will be hereafter discussed.

2. The plaintiff offered evidence tending to show, that after the division the remaindermen went into possession of their respective shares, and have remained in possession since that time, and that the claimant recognized the division as binding on her and had never exercised ownership over the land; that the defendant, who was 32 years old at the trial, had sold the right to work the trees for turpentine on his share, had mortgaged it to secure money

which he had borrowed from the plaintiff, and treated the land as his own, with the knowledge of the claimant. The ordinary testified that in 1894 Mrs. Crumley (formerly Mrs. Miller) came to him and told him her children were coming of age, and that she had no use for so much land, and filed with him a petition relinquishing her life-estate and requesting a division of the land among her children. The land was divided by appraisers appointed by him, and he advised Mrs. Crumley to have deeds made to complete the division. On the other hand, the claimant denied that the petition for a division of the land in the court of ordinary was filed by her authority, and denied she ever surrendered or relinquished her life-estate or acquiesced in the division. Objection was taken to the testimony that the children, other than the defendant in fi. fa., took possession of their respective allotments immediately after the division in 1895, and had remained in possession since that time, exercising acts of ownership and erecting valuable improvements thereon. This testimony was admissible as tending to show the claimant's acquiescence in the division, and the erection of valuable improvements by the remaindermen upon the faith of such waiver. If the claimant caused to be filed the petition to the ordinary, relinquishing her life-estate in the land, and caused a division of it among the remaindermen, who entered into possession of their respective shares, and have remained in possession for a long period of years, and have erected valuable improvements on the faith of the life-tenant's waiver of her interest in the land, she will be estopped from thereafter asserting her life-estate interest. 16 Cyc. 791.

3. It follows from the foregoing rulings, in view of conflicting evidence, that the court erred in directing a verdict for the plaintiff.

*Judgment reversed. All the Justices concur, except Atkinson, J., absent.*